IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTHA C.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | )  No. 23 C 14848 |
| v. | ) |
| | )  Magistrate Judge Laura K. McNally |
| FRANK BISIGNANO, | ) |
| Commissioner of | ) |
| Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**ORDER**[3]

Before the Court is Plaintiff Martha C.'s memorandum in support of reversing or remanding the Administrative Law Judge's ("ALJ") decision denying her disability benefits application (Dkt. 13: Pl. Mem. in Supp. of Rev. or Remanding the Comm.'s Decision, "Pl. Mem."), and Defendant's motion for summary judgement (Dkt. 16) and memorandum in support of his motion for summary judgment. (Dkt. 17: Def. Mem. in Supp. of Mot. for Summ. J., "Def. Mem.")

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.
[2] The Court substitutes Frank Bisignano for his predecessor(s) as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).
[3] On October 31, 2023, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 7.)

I. **Procedural History**

Plaintiff applied for both supplemental security income and disability insurance benefits on December 5, 2016 (R. 351, 357), alleging disability beginning on November 14, 2016. (R. 377.) Plaintiff's date last insured was March 31, 2019. (R. 466.) Plaintiff's claims were denied initially on August 16, 2017, and upon reconsideration on November 14, 2017. (R. 54, 173-99, 200-28.) The ALJ held in-person hearings on December 4, 2018 and May 24, 2019. (R. 85-103, 136-72.) On July 17, 2019, the ALJ issued a written decision denying Plaintiff's application and finding her not disabled under the Social Security Act.[4] (R. 66.) This appeal followed. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

II. **The ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 56.) At Step Two, the ALJ determined that Plaintiff has the severe impairments of chronic ischemic heart disease, hypertension, degenerative disc disease of the thoracic and cervical spine, mild osteoarthritis of the right knee, mild left cervical radiculopathy, osteoarthritis of the left shoulder, and osteoarthritis of the right hand. (R. 57.) The ALJ also found that

---

[4] The Appeals Council subsequently denied review of the ALJ's decision (R. 23), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

Plaintiff had medically determinable but nonsevere physical impairments of carpal tunnel syndrome and obesity, and mental impairments of anxiety disorder, and depressive disorder. (*Id.*) The ALJ acknowledged Plaintiff's claim of fibromyalgia but determined based on the agency's regulations that it was not a medically determinable impairment. (R. 59-60.)

Because Plaintiff's claimed impairments of anxiety disorder and depressive disorder are mental impairments, the ALJ evaluated their severity against the four "Paragraph B" functional areas as required in the regulations. The ALJ concluded that Plaintiff had only mild limitations in each of the four "Paragraph B" categories: understanding, remembering, or applying information; interacting with others; concentration, persistence, and pace; and adapting or managing oneself. (R. 57-59.)

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a statutory Listing. (R. 60.) Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she "cannot climb ladders, ropes, or scaffolds," "can frequently climb ramps and stairs," "can occasionally be exposed to extreme heat and extreme cold," "can frequently finger with the right hand," and "can frequently reach overhead on the left." (*Id.*)

3

At Step Four, the ALJ found that Plaintiff was capable of performing her past relevant work as an accounting clerk and as a collections clerk. (R. 65.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 66.)

## III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520(a)(4).[5]

An affirmative answer at either Step Three or Step Five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at Step Three precludes a finding of

---

[5] The regulations that govern disability insurance benefits (20 C.F.R. Part 404) and supplemental security income (20 C.F.R. Part 416) are virtually identical in all relevant respects. Accordingly, the Court will cite to the regulations for disability insurance found in 20 C.F.R. Part 404.

4

disability. *Id.* The plaintiff bears the burden of proof at Steps One to Four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit stated, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024).

"All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a

5

similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV. Analysis**

Plaintiff makes three arguments in favor of remand. First, Plaintiff asserts that the ALJ erred in evaluating her subjective symptoms by ignoring evidence and relying on lay inferences. (Pl. Mem. 12-14.) Second, Plaintiff claims the ALJ failed to incorporate limitations stemming from Plaintiff's mental impairments in the RFC. (Pl. Mem. 7-11.) Third, Plaintiff contends that the ALJ improperly concluded that Plaintiff's alleged fibromyalgia was not a medically determinable impairment. (Pl. Mem. 11-12.) After reviewing the briefs and record evidence, this Court ultimately finds that the ALJ supported her conclusion with substantial evidence as required.

**A. The ALJ's Evaluation of Plaintiff's Subjective Symptoms Was Not Patently Wrong.**

The bulk of Plaintiff's evidence in support of her arguments relies on her subjective allegations about the severity of her symptoms. Therefore, the Court will address her attack on the ALJ's subjective symptom analysis first. Plaintiff argues that

6

the ALJ impermissibly relied on leaps of logic and lay inferences in finding Plaintiff's subjective claims to be not entirely consistent with the evidence in the record (Pl. Mem. 12-14).

When reviewing an ALJ's assessment of Plaintiff's symptoms, this Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted). As long as an ALJ gives specific reasons supported by the record, the Court "will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The Seventh Circuit has even stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff contends that the ALJ used impermissible leaps of logic and lay inferences to discredit Plaintiff's allegations about the severity of her symptoms, arguing that the ALJ "may not simply reject a Plaintiff's claims because she believes she is untruthful." (Pl. Mem. 12-13.) Upon review of the ALJ's analysis, the Court finds that the ALJ's evaluation was not patently wrong.

In both a function report she completed in 2017 and in her testimony at the hearings, Plaintiff alleged that the severity of her symptoms rendered her disabled. As relevant here, Plaintiff claimed in her function report that her mental impairments

7

hinder her abilities to remember, understand, and follow instructions and that she needed assistance to take prescribed medications and attend appointments. (R. 57.)

Plaintiff also claimed that she did not finish what she starts, she did not handle change well, she could only pay attention for ten minutes, and although she was able to engage in personal care like dressing, bathing, caring for hair, shaving, feeding herself, and using the restroom independently, she experienced fatigue after doing so. (*Id.*)

At the hearing, Plaintiff testified that she sought therapy as a result of her mental impairments. (R. 57.) As relevant here, she testified that she could not work because she had difficulty remembering, completing tasks, concentrating, and understanding. (R. 61.) Plaintiff also alleged she could not work due to physical limitations including difficulty lifting, squatting, bending, standing, reaching, walking, kneeling, and climbing stairs. (*Id.*)

The ALJ acknowledged all of Plaintiff's alleged symptoms and took them into consideration when determining they were not as severe as she alleged. Contrary to Plaintiff's argument that the ALJ should not discount some of her allegations simply because other evidence discredits it (Pl. Mem. 12-13), that sort of weighing is exactly what the ALJ was supposed to do. As the regulations outline, ALJs consider several factors when evaluating a plaintiff's subjective symptoms, including objective medical evidence and other evidence including a plaintiff's daily activities, the type, dosage, and effectiveness of medications, and other forms of treatment. 20 C.F.R. § 404.1529; Social

8

Security Ruling (SSR) 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In accordance with her duties, the ALJ weighed Plaintiff's subjective complaints alongside each other and evaluated them against the record.

For example, with respect to Plaintiff's memory, the ALJ acknowledged that Plaintiff "reported that her conditions affected her ability to remember, understand and follow instructions," and that Plaintiff "need[ed] special assistance to take her prescribed medications and attend appointments." (R. 57.) The ALJ also recognized, though, that Plaintiff "reported she did not need any special reminders to engage in personal grooming," "was responsible for maintaining appointments for herself and her mother," and "is able to pay bills, count change, handle a savings account, and use a checkbook and/or money orders." (*Id.*)

Similarly, after considering that Plaintiff "reported that she did not spend time with others" and "prefers someone to accompany her when leaving her home," the ALJ also noted that Plaintiff "reported living with and caring for her mother," "reported that she does not have any problems getting along with family, friends, neighbors, or authority figures," and "has never been fire off or laid off from employment due to difficulty getting along with others [sic]." (R. 58.) The ALJ analyzed these claims and evaluated them in light of Plaintiff's May 2017 psychological consultative examination, which the ALJ noted included doctor's notes that Plaintiff "was alert, cooperative, and eager to participate . . . pleasant, personable despite having a dysphoric mood and

9

being occasionally tearful," evincing only mild limitations in Plaintiff's ability to interact with others. (R. 58.)

Regarding Plaintiff's physical allegations, the ALJ noted that despite Plaintiff's allegations of significant limitations due to her heart condition (R. 111, 156), treatment including surgery and medication were effective, as demonstrated by stable examination findings and her functional abilities at the May 2017 consultative examination. (R. 61-62). Similarly, the ALJ found Plaintiff's degenerative disc disease and impairments of her right knee and hand and left shoulder were not as limiting as alleged due to examination findings indicating normal range of motion and full strength, effective treatment, and her daily activities (R. 62-64).

In these and other examples, the ALJ weighed Plaintiff's symptoms against the full record to determine the degree to which the ALJ could rely on Plaintiff's claims. Contrary to Plaintiff's assertion that the ALJ relied on her lay opinion, the ALJ referred to findings in the medical evidence or doctors' notes to make her conclusions. And, it was the ALJ's very consideration of Plaintiff's subjective complaints at the hearing, not the ALJ's lay opinion, that ultimately convinced her to find a more restrictive RFC than that of the medical experts, stating that she limited Plaintiff to sedentary work (as opposed to light work) to accommodate Plaintiff's "subjective complaints of dyspnea on exertion." (R. 62.)

10

Plaintiff provided no medical evidence to support her subjective symptom allegations. Nor did Plaintiff identify limitations resulting from any subjective symptoms that the ALJ did not consider for this Court to review. Rather, the ALJ provided an evaluation of Plaintiff's subjective symptoms that considered the objective medical evidence and other evidence including Plaintiff's treatment and activities and thus complied with the regulations. The ALJ thus reasonably concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 61). *See* 20 C.F.R. § 404.1529; SSR 16-3p. Plaintiff's contentions about the ALJ's subjective symptom evaluation ultimately ask this Court to reweigh the evidence which this Court cannot do. Therefore, the Court affirms the Commissioner's findings on this issue.

    **B. The ALJ Adequately Considered Plaintiff's Mental Impairments.**

Plaintiff argues that the ALJ failed to properly consider her mental impairments at Step Two and in determining Plaintiff's RFC (Pl. Mem. 7-10). As relevant here, the ALJ assessed at Step Two that Plaintiff had the non-severe mental impairments of anxiety disorder and depressive disorder. (R. 57.) Plaintiff challenges the ALJ's evaluation of Plaintiff's mental impairments and despite discussing Step Two, appears to actually argue that the ALJ erred in not including any mental limitations in her RFC finding. (Pl. Mem. 8-10). After considering Plaintiff's arguments, the Court concludes

11

that the ALJ supported with substantial evidence her consideration of Plaintiff's mental impairments and ultimately, the omission of mental limitations from the RFC.

The ALJ recognized that Plaintiff's treatment records included diagnoses of depression and anxiety by Plaintiff's primary care physician, as well as a prescription for psychotropic medication by Plaintiff's cardiologist. (R. 57.) The ALJ also noted that Plaintiff reported the "medication helped with her anxiety." (R. 58.) After conducting the appropriate analysis to determine the severity of each mental impairment, the ALJ concluded that Plaintiff's "anxiety disorder and depressive disorder, considered singly and in combination, do not cause more than minimal limitation" for Plaintiff. (R. 57.)[6]

Despite her suggestion that her mental impairments contributed to "disabling limitations", Plaintiff does not identify any functional limitation that the ALJ should have considered related to her non-severe mental impairments. (Pl. Mem. 11). *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (It is a plaintiff's burden to present evidence in support of functional limitations that stem from her impairments.) Plaintiff's "evidence" of unspecified limitations consists primarily of complaints she reported to the psychological consultative examiner about how her mental impairments impact her. For example, she cites observations from the psychological consultative examination

---

[6] The Court notes that it agrees with Defendant that the decision must be read holistically and that when doing so in this case, it is clear the ALJ adequately considered Plaintiff's mental impairments in combination with her physical impairments in determining her RFC. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021).

12

which indicated dysphoric mood and occasional tearfulness. (R. 868). These symptoms do not suggest any functional limitation. Further, as the ALJ discussed, the consultative examiner also noted that Plaintiff was alert, cooperative, and had a pleasant and personable manner. (R. 85). The ALJ properly weighed the evidence Plaintiff cites, which did not corroborate her allegation that her mental impairments cause functional limitations.

The ALJ also evaluated state agency prior administrative medical findings of psychological reviewers Thomas Low, Ph.D. and David Voss, Ph.D. (R. 59). Both Dr. Low and Dr. Voss reviewed the evidence and found that Plaintiff's mental impairments were not severe and did not assess any mental workplace limitations. (R. 180, 208, 223.) The ALJ assigned these findings "considerable weight" and thus supported her determination that Plaintiff had no mental workplace limitations. (R. 59). Plaintiff points to no medical opinions with mental limitations to contradict the ALJ's determination.

By not pointing out any omitted limitations nor providing objective evidence that supports mental limitations, Plaintiff failed to meet her burden of demonstrating that the ALJ erred in her assessment of Plaintiff's mental impairments. Rather, the ALJ reasonably determined Plaintiff did not have any mental workplace limitations and supported her overall RFC determination with substantial evidence. The Court affirms the Commissioner's findings on this issue.

### C. The ALJ's Assessment of Plaintiff's Fibromyalgia was Sufficient

Plaintiff contends that this Court should remand because the ALJ incorrectly found Plaintiff's fibromyalgia non-medically determinable. (Pl. Mem. 11-12.). Plaintiff claims that this was because the ALJ attributed Plaintiff's fibromyalgia pain to other conditions. (Pl. Mem. 11.) Plaintiff asserts that, contrary to the ALJ's finding, several symptoms of Plaintiff's pain remain unexplained, including arm weakness, limited range of motion, and chronic fatigue, and therefore these should be viewed as relating to fibromyalgia. (Pl. Mem. 12.)

"Given the difficulty of evaluating fibromyalgia, the Social Security Administration has issued guidance specific to this ailment: Social Security Ruling SSR 12-2p, 2012 WL 3104869 (July 25, 2012)." *Swiecichowski v. Dudek*, 133 F.4th 751, 757 (7th Cir. 2025); *see Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("Social Security Rulings lack the force and effect of law, but they are binding on ALJs.")." Both diagnostic tests under this guidance require the ALJ to isolate symptoms as caused only by fibromyalgia and find "evidence that other disorders that could cause [fibromyalgia] symptoms were excluded." SSR 12-2P, 2012 WL 3104869 (July 25, 2012).

When analyzing the evidence, the ALJ explained that she found fibromyalgia non-medically determinable because "the record does not contain evidence demonstrating that the claimant has any tender points or widespread body pain aside

14

from the pain attributed to the claimant's severe medically determinable impairments." (R. 59-60.) When doing so, the ALJ determined that the evidence showed that Plaintiff's symptoms could be attributed to other impairments. This meant the symptoms could not be excluded as attributable only to fibromyalgia. (*Id.*) This explanation by the ALJ provided the minimal articulation necessary for this Court to find the ALJ's Step Two analysis sufficient.

Plaintiff argues that finding fibromyalgia medically determinable would have compelled the ALJ to factor Plaintiff's fatigue into the RFC assessment. Plaintiff does not, however, point to how this fatigue should have altered the assessed RFC. (Pl. Mem. 12.) Additionally, the ALJ accounted for Plaintiff's fatigue. The ALJ considered Plaintiff's claims from her function report that she would feel fatigued after engaging in personal care activities. (R. 58.) The ALJ also acknowledged Plaintiff's reports of fatigue from a July 2017 cardiac follow-up and incorporated them in her overall evaluation of Plaintiff's RFC. (R. 62.) The ALJ ultimately found Plaintiff capable only of sedentary work to explicitly accommodate Plaintiff's subjective symptoms, including "dyspnea on exertion." (R. 60, 62.)

Importantly, Plaintiff's own medical providers never even provided a fibromyalgia diagnosis. Plaintiff cites an October 2018 primary care treatment note to demonstrate she was diagnosed with fibromyalgia (Pl. Mem. 12). This note indicated Plaintiff attributed a fibromyalgia diagnosis to her rheumatologist, Kimberly Trotter,

15

M.D. (R. 998-99). In September 2018, Dr. Trotter concluded that Plaintiff's symptoms were most consistent with osteoarthritis and tendonitis and wrote that provers could "consider possible overlapping fibromyalgia/central pain" but did not include fibromyalgia in her list of diagnoses. (R. 1020). Thus, the record does not demonstrate that Plaintiff was ever diagnosed with fibromyalgia.

Because Plaintiff did not identify any fibromyalgia-related additional effects that the ALJ did not consider in formulating the RFC, the ALJ accounted for Plaintiff's fatigue and general symptoms more broadly, and it does not appear that Plaintiff was diagnosed with fibromyalgia, this Court finds no error in the ALJ's finding that fibromyalgia was non-medically determinable.

Overall, the ALJ provided specific reasons, supported by the record, for her assessment of Plaintiff's symptoms and overall RFC determination. She also accounted for Plaintiff's symptoms by finding greater limitations than the reviewing physicians in the record. (R. 65.) Plaintiff outlined no limitations the ALJ omitted in her assessment. This Court will not reweigh the evidence and does not find the ALJ's analysis patently wrong. After considering the briefs and supporting record, this Court finds that the ALJ supported her RFC determination with substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum seeking to reverse or remand the ALJ's decision (Dkt. 13) and grants Defendant's motion seeking to affirm. (Dkt. 16.)

**SO ORDERED.**

        **ENTER:**

        _____

        **LAURA K. MCNALLY**

        **United States Magistrate Judge**

**DATED: January 26, 2026**